**LTL ATTORNEYS LLP**
James M. Lee (SBN 192301)
  James.Lee@ltlattorneys.com
Blake Guerrero (SBN 322671)
  Blake.Guerrero@ltlattorneys.com
300 South Grand Avenue, 14th Floor
Los Angeles, CA 90017
Tel: 213-612-8900
Fax: 213-612-3773

Attorneys for Plaintiff
Thomas McKeever

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS McKEEVER, | Case No. 3:18-cv-02851-EDL |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| OPENSPEND, INC., a Delaware corporation; SEAN MANEY, an individual, and DOES 1 through 10, | |
| Defendants. | Hearing Date:   February 12, 2019<br>Time:   9:00 a.m.<br>Courtroom:   Courtroom E |

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ........................................................... 1

II.  STATEMENT OF FACTS ................................................. 2

III. ARGUMENT .................................................................. 4

  A. Dismissal Under 12(b)(1) is Unwarranted ........................... 5

    1.  Plaintiff's Claims are Not Moot ................................... 5

    2.  There is Diversity Jurisdiction Over Plaintiff's Claims ........... 6

      a.  Plaintiff has Satisfied the Amount in Controversy Requirement ............ 6

  B. Dismissal Under 12(b)(2) is Inappropriate ......................... 8

    1.  Defendants Have Waived Personal Jurisdiction Challenges ......... 8

    2.  Regardless, this Court Has Personal Jurisdiction Over Defendants .............. 9

      a.  Defendants Purposefully Availed Themselves of Doing Business in California ............ 10

      b.  Plaintiff's Claims Arise from Defendants' Forum-related Activities .... 13

      c.  Jurisdiction Over Defendants is Reasonable ......................... 14

    3.  At a Minimum, Jurisdictional Discovery Should be Permitted ................... 16

  C. Leave to Amend Should Be Granted ................................. 16

IV.  CONCLUSION................................................................ 16

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**CASES**                                                                                          Page(s)

*American Ass'n of Naturopathic Physicians v. Hayhurst,*
    227 F.3d 1104 (9th Cir. 2000) ................................................................. 8

*AT&T Corp. v. Teliax, Inc.,*
    2016 WL 4241910 (N.D. Cal. Aug. 11, 2016) ............................................. 8

*Ballard v. Savage,*
    65 F3d 1495 (9th Cir. 1995) ................................................................. 13, 14

*Boston Bos. Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu,*
    249 F. App'x 534 (9th Cir. 2007) ............................................................. 8

*Brainerd v. Governors of the Univ. of Alberta,*
    873 F.2d 1257 (9th Cir. 1989) ................................................................. 15

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................. 10, 12

*Caruth v. International Psychoanalytical Ass'n,*
    59 F.3d 126 (9th Cir. 1995) ................................................................. 15

*Core–Vent Corp. v. Nobel Indus. AB,*
    11 F.3d 1482 (9th Cir.1993) ................................................................. 14

*Cybersell, Inc. v. Cybersell, Inc.,*
    130 F.3d 414 (9th Cir. 1997) ................................................................. 13

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.,*
    557 F.2d 1280 n.1 (9th Cir. 1977) ............................................................. 16

*Davis v. Metro Productions, Inc.,*
    885 F.2d 515 (9th Cir. 1989) ................................................................. 11

*Davis v. NIH Fed. Credit Union,*
    2013 WL 2147468 (N.D. Cal. May 15, 2013) ............................................. 11

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) ................................................................. 11

*Fireman's Fund Ins. Co. v. Fuji Elec. Sys. Co.,*
    2005 WL 628034 (N.D. Cal. Mar. 17, 2005) ............................................. 16

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives,*
    103 F.3d 888 (9th Cir. 1996) ................................................................. 9

*Forest Guardians v. Johanns,*
  450 F.3d 455 (9th Cir. 2006) ........................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ......................................................................................... 5

*Gen. Motors Corp. v. Manly Oldsmobile-GMC, Inc.,*
  2007 WL 776261, (N.D. Cal. Mar. 12, 2007) .................................................. 6

*Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,*
  784 F.2d 1392 (9th Cir. 1986) ........................................................... 9, 10, 15

*Huynh v. Chase Manhattan Bank,*
  465 F.3d 992 (9th Cir. 2006) ........................................................................... 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  27 F. Supp. 3d 1002 (N.D. Cal. 2014) ............................................................. 8

*K. Durant Enterprises, LLC v. Swanson Travel Professionals, Inc.,*
  2014 WL 545843 (C.D. Cal. 2014) .................................................................. 6

*Knox v. Serv. Employees Int'l Union, Local 1000,*
  567 U.S. 298 (2012) ......................................................................................... 5

*Lake v. Lake,*
  817 F.2d 1416 (9th Cir. 1987) ....................................................................... 13

*Lewis v. Verizon Commc'ns, Inc.,*
  627 F.3d 395 (9th Cir. 2010) ........................................................................... 6

*Life360, Inc. v. Advanced Ground Info. Sys., Inc.,*
  2015 WL 2090000 (N.D. Cal. May 5, 2015) .................................................. 16

*Menken v. Emm,*
  503 F.3d 1050 (9th Cir. 2007) ....................................................................... 13

*Muckleshoot Indian Tribe v. U.S. Forest Service,*
  177 F.3d 800 (9th Cir. 1999) ........................................................................... 5

*Murphy v. Hunt,*
  455 U.S. 478 (1982) ......................................................................................... 5

*Myers v. Bennett Law Offices,*
  238 F.3d 1068 (9th Cir. 2001) ....................................................................... 14

*Naffe v. Frey,*
  789 F.3d 1030 (9th Cir. 2015) ..................................................................... 6, 7

*O'Keefe's, Inc. v. John Moriarty & Assocs. of Fla., Inc.,*
  2007 WL 2123567 (N.D. Cal. July 23, 2007) ............................................... 15

*Ochoa v. J.B. Martin & Sons Farms*,
   287 F.3d 1182 n.2 (9th Cir. 2002) ................................................................. 10, 11

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ............................................................................ 16

*Panavision Int'l, LP v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ...................................................................... 13, 15

*Seagate Technology v. A. J. Kogyo Co.*,
   219 Cal. App. 3d 696 (1990) ............................................................................ 11

*Senne v. Kansas City Royals Baseball Corp.*,
   105 F. Supp. 3d 981 (N.D. Cal. 2015) ............................................................ 11

*Sinatra v. National Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ...................................................................... 14, 15

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ......................................................................................... 7

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) ...................................................................... 10, 12

**Statutes**

28 U.S.C. § 1332 ............................................................................................. 4, 6, 7

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. 8, 9

Fed. R. Civ. P. 8(a)(1) ......................................................................................... 6

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

## I.    INTRODUCTION

Defendants' motion to dismiss should be denied. Plaintiff properly alleged the Court's subject matter jurisdiction over this case and personal jurisdiction over Defendants.

Regarding mootness, the Court found at the December 4, 2018 hearing that the dispute was patently *not* moot, given Plaintiff's request for a declaration from the Court that he was a proper shareholder and that the share certificates were valid and proper.[1] This is all the more true given Defendants' stubborn maintenance of a Texas state court action that seeks a ruling that Plaintiff is *in fact not entitled* to be a shareholder of OpenSpend.

Regarding the amount-in-controversy, the Court was clear at the December 4, 2018 hearing that Plaintiff had properly alleged the amount-in-controversy of over $75,000.  In the Second Amended Complaint, Plaintiff expanded upon this allegation, noting that "[u]pon information and belief, these shares are valued in excess of $75,000 based on a good faith estimate of the value of the stock (regardless of their face value)." SAC ¶ 25.  This is enough to meet the amount-in-controversy requirement.[2]

Regarding personal jurisdiction, this is a new argument first raised by Defendants in response to Plaintiff's Second Amended Complaint, and is hence waived.  Defendants never challenged personal jurisdiction in their prior motion to dismiss, likely because Defendants know how weak the argument is.  Defendant OpenSpend has not only sold its hair salon management software to customers in California and has current California customers, but in the past, it even had employees who resided in California and had other employees come to California to sell its

---

[1] In fact, when defense counsel made an oral representation at the December 4, 2018 hearing "as an officer of the Court" that the shares were valid, the Court noted that "the Court saying they are authentic is a little bit stronger than an officer of the Court saying it."

[2] Plaintiff has information about the valuation of OpenSpend, at least as of June 2017 when he stopped working for OpenSpend.  Because Plaintiff's shares at the time represented approximately 2% of the outstanding shares of OpenSpend, Plaintiff in good faith believes that his shares are worth well over $200,000, and can so allege in a further amended complaint if necessary.

software to hair salons in California.  Decl. of Thomas McKeever ¶ 2–4. Defendant OpenSpend also sent its employees to California to try to find investors for OpenSpend. *Id.* ¶ 4. As part of this process, it also engaged lawyers at Reed Smith from its San Francisco office. *Id.* ¶ 5.

Moreover, Defendant Maney negotiated with Plaintiff regarding Plaintiff's employment package *while Plaintiff was residing in California*, and while Plaintiff was in California. *Id.* ¶ 5. Mr. McKeever was in California when he executed his offer letter. The understanding between the parties in the middle of 2016 was that McKeever would work for OpenSpend remotely from California. And that was in fact what happened— McKeever worked from July 2016 to the end of 2016 for OpenSpend remotely from California.  *Id.* ¶ 7. McKeever did not move to Texas until January 2017. *Id.*

Based on the foregoing, this Court should not dismiss based on Defendants' personal jurisdiction arguments.  At a minimum, this Court should order jurisdictional discovery.

## II.   STATEMENT OF FACTS

Thomas McKeever, a resident of California, is suing Sean Maney, a resident of Texas or Massachusetts, and OpenSpend, which is incorporated in Delaware and headquartered in Massachusetts. SAC ¶¶ 4–6.  Maney is the founder, President, and majority owner of OpenSpend. *Id.* ¶¶ 6, 50. "[A]n actual controversy has arisen and still exists between the parties relating to Plaintiff's status as shareholder of OpenSpend and its related rights." *Id.* ¶ 60.

Defendants conduct or solicit business within both California generally and the Northern District specifically, and have availed itself of the privilege of doing business in California. *Id.* ¶ 3. OpenSpend sells "a back-office software solution to hair salon operators." *Id.* ¶ 12.  In fact, at least while McKeever was working for OpenSpend, it employed a full-time salesperson who sold software in California  to hair salons based in California. Decl. of Thomas McKeever ¶ 3.  OpenSpend also had pre-existing California customers who are still using and paying for OpenSpend software. *Id.* ¶ 2.

While McKeever was living in his hometown of San Francisco and acting as interim general counsel for a company based in California, Defendant Maney approached him about joining OpenSpend. SAC ¶ 13.  The negotiations between McKeever and Maney occurred while McKeever was living in California. *Id.* Maney hired McKeever as OpenSpend's Chief Operating Officer and General Counsel while McKeever was living in California. *Id.* ¶¶ 15, 21. While McKeever was still living in California, Maney mislead McKeever in connection with his employment and compensation, including stock options. In "the weeks leading up to August 1, 2016," Maney "made a number of oral representations . . . [with] no intention of honoring these representations." *Id.* ¶¶ 43, 45. "In reliance of these representations, Mr. McKeever accepted the [job] offer and began to work for Defendants." *Id.* ¶ 44.

At first, the understanding between the parties was that McKeever would work remotely for OpenSpend from California. Decl. of Thomas McKeever ¶ 7. McKeever worked remotely from California from July 2016 until the end of 2016; then, in January 2017, he moved from California to Texas, giving up other business opportunities he had been pursuing in California. SAC ¶ 15; Decl. of Thomas McKeever ¶ 7. "McKeever worked solely for stock options from his hire date in or about July 2016 through December 31, 2016. Thereafter he earned both cash and a reduced number of stock options." SAC ¶ 17. McKeever and Maney, on behalf of OpenSpend, then signed two Notice of Stock Option Agreements. *Id.* ¶ 20. In June 2017, McKeever was terminated. *Id.* ¶ 22.

The next month, McKeever "sent exercise notices along with two checks of $5,503.41 and $4,876.92 (total $10,380.33) to exercise vested options for 54,088 shares and 61,149 shares. Defendants promptly cashed these checks." *Id.* ¶¶ 23, 36. Plaintiff has alleged that he "performed all duties, promises, and obligations required of him by the Stock Option Agreements to fully exercise his option rights, and all conditions precedent have been satisfied." *Id.* ¶ 36. Under the terms of the Stock Option Agreements, Defendants were required to "transfer all shares of OpenSpend pursuant

1  to the requirements of the Stock Option Agreements." *Id.* ¶ 38.

2      Defendants failed "to deliver the promised and paid for shares of OpenSpend

3  stock." *Id.* ¶ 31.   Instead of the electronic shares promised, Defendants delivered

4  physical stock certificates that do not comport with the number of the other stock

5  certificates that were issued. *Id.* ¶ 27.  Despite claiming that authentic stock certificates

6  were delivered, Defendants continue to maintain their action in Texas. *Id.*   ¶ 28. In

7  Defendants' Texas action, they contend that Plaintiff is not entitled to the stock

8  certificates due to alleged misconduct by Plaintiff. *Id.* ¶ 59. Therefore, Plaintiff has

9  requested that the Court recognize his status as shareholder and determine the

10  authenticity of the stock certificates. *Id.* ¶¶ 57–58.

11      Plaintiff has alleged the following causes of action: Breach of Contract, Specific

12  Performance, Fraud, Breach of Fiduciary Duty, Declaratory Relief, and a violation of

13  California Business and Professions Code section 17200 et seq. Plaintiff also alleged

14  an amount in controversy "in excess of $75,000." *Id.* ¶ 11. Plaintiff has been harmed

15  by Defendants' failure "to deliver the stock certificates after cashing the checks by

16  Plaintiff." *Id.* ¶ 62. These damages are based on the value of the stock and on

17  Defendants' "despicable conduct with the intent of injuring Plaintiff and subjecting

18  him to cruel and unjust hardship in conscious disregard of his rights." *Id.* ¶¶ 25, 48, 55.

19  Plaintiff has also incurred the cost of moving to Texas, lost business opportunities in

20  California, the cost of filing this lawsuit, the attorneys' fees related to this lawsuit, and

21  Plaintiff's inability to exercise his shareholder rights. *Id.* ¶ 47, 54. Defendants knew at

22  all relevant times that Plaintiff resided in California and that any injury to him would

23  likely be suffered in California. *Id.* ¶ 3.

24  **III.    ARGUMENT**

25      The court should deny Defendants' motion to dismiss because the Court has

26  diversity subject matter jurisdiction over this matter under 28 U.S.C. § 1332 and

27  Defendants are subject to the personal jurisdiction of this Court. In reviewing the

28  motion, the Court must assume the truth of all factual allegations and construe them

most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

### A.   Dismissal Under 12(b)(1) is Unwarranted

#### 1.   Plaintiff's Claims are Not Moot

A "moot action" is one where the "issues presented are no longer 'live or the parties lack a legally cognizable interest in the outcome" *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). "The party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide." *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). A "defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The Ninth Circuit has noted its "reluctance to invoke the doctrine of mootness" and has stressed "the 'heavy' evidentiary burden that a party must carry in order to establish mootness." *Muckleshoot Indian Tribe v. U.S. Forest Service*, 177 F.3d 800, 815 (9th Cir. 1999).

Defendants argue that McKeever's claims are moot because OpenSpend issued and delivered physical stock certificates. Mot. to Dismiss at 7. Although Defendants delivered physical stock certificates, the physical stock certificates do not appear genuine.  SAC ¶ 27. For example, Defendants stated that "electronic shares" would be issued, yet allegedly issued paper ones. *Id.* Moreover, the stock numbers do not appear to comport with the numbering of the other stock certificates that were issued. *Id.*

Additionally, the Court can still render effective relief on this specific matter by issuing a declaration that the certificates are in fact genuine, and that McKeever has good title to such shares covered by those certificates, free and clear of any lien, encumbrance, adverse claim, restriction on sale, transfer or voting (other than

restrictions imposed by applicable securities laws), preemptive right, option or other right to purchase.  In fact, the Court has already stated that it has jurisdiction over this issue in its order on the first motion to dismiss on January 8, 2019. Order at 6 [Dkt. No. 36].

Therefore, the doctrine of mootness does not apply here.

### 2.  There is Diversity Jurisdiction Over Plaintiff's Claims

The complaint in a federal action must contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). A federal court has diversity jurisdiction over the underlying dispute (1) if the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). A complaint should only be dismissed for lack of subject matter jurisdiction where "it is clear that plaintiff will be unable to prove any set of facts which would entitle him to recover." *Gen. Motors Corp. v. Manly Oldsmobile-GMC, Inc.*, No. C07-0233 JCS, 2007 WL 776261, at *2 (N.D. Cal. Mar. 12, 2007).

### a.  Plaintiff has Satisfied the Amount in Controversy Requirement

To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must allege that the amount in controversy "exceeds the sum or value of $75,000 exclusive of interest and costs." Plaintiffs need not itemize or show how they arrived at the amounts of damages claimed. A general conclusory allegation that the damages exceed the minimum jurisdictional limit is sufficient. *See K. Durant Enterprises, LLC v. Swanson Travel Professionals, Inc.*, 2014 WL 545843, at *2 (C.D. Cal. 2014). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). On a motion to dismiss, the Court "must accept the amount in controversy claimed by the plaintiff unless it can declare to a legal certainty that the case is worth less." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015). Furthermore, "[e]vents occurring subsequent to the institution of suit which reduce the amount

recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem.*
*Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938).

In light of these standards, Defendants' contention that the dispute does not meet
the amount in controversy threshold under 28 U.S.C. §1332(a) is incorrect. Defendants
argue that the Stock Option Agreements show that the value of the stock is only
$37,969.13. Mot. to Dismiss at 9. Defendants appear to be calculating that amount by
multiplying the Exercise Price by the total number of shares that would be possible to
purchase.

However, the Exercise Price reflected an *estimated value* of the shares at the time
the agreement was executed, which was in October 2016.  SAC, Ex. A at 1, Ex. B at 1.
Over two years later, Plaintiff alleges that "[u]pon information and belief, [the stock]
shares are valued in excess of $75,000 based on a good faith estimate of the value of
the stock." *Id.* ¶ 25.  Defendants' motion does not establish a lower value of the shares
as a legal certainty, as required.

Even if the stocks' value is not considered, Plaintiff has still clearly alleged in
the Complaint that "[t]he amount in controversy is in excess of $75,000." *Id.* ¶ 11. This
is all that is required under the law. *See Naffe*, 789 F.3d at 1040.  The amount in
controversy is not *just* based on the value of the stock certificates, it is also based on
Plaintiff's claims for breach of contract, specific performance, fraud, breach of
fiduciary duty, declaratory judgment, and unfair competition. Plaintiff's claims for
fraud and breach of fiduciary duty specifically allege that "Plaintiff has been damaged
in an amount to be demonstrated at trial but believed in excess of $75,000." SAC ¶¶
47, 54. Under fraud, the amount alleged is based on Plaintiff's inconvenient and costly
move to Austin, Texas and Plaintiff's lost business opportunities in California. *Id.* ¶ 47.
Under breach of fiduciary duty, the amount alleged includes the cost of filing this
lawsuit, the attorneys' fees related to this lawsuit, and Plaintiff's inability to exercise
his shareholder rights. *Id.* ¶ 54.

Therefore, Plaintiff has sufficiently alleged the amount in controversy which

1   exceeds the jurisdictional amount needed for diversity jurisdiction.

2   **B.     Dismissal Under 12(b)(2) is Inappropriate**

3   **1.     Defendants Have Waived Personal Jurisdiction Challenges**

4   Under Rule 12(h), "if a party files a responsive pleading or makes

5   a Rule 12 motion but does not raise personal jurisdiction as a defense, the

6   party waives the right to raise personal jurisdiction later." *In re Cathode Ray Tube*

7   *(CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014); *see also AT&T*

8   *Corp. v. Teliax, Inc.*, No. 16-CV-01914-WHO, 2016 WL 4241910, at *2 (N.D. Cal.

9   Aug. 11, 2016) ("[a] party waives a defense based on lack of personal jurisdiction by

10  omitting it from its first Rule 12(b) motion."). "[A] party that makes a motion under

11  [Rule 12] must not make another motion under this rule raising a defense or objection

12  that was available to the party but omitted from its earlier motion." Fed. R. Civ. P.

13  12(g)(2). "This Circuit has construed these provisions strictly, observing that '[a]

14  fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under

15  Fed.R.Civ.P. 12 must be raised at the first available opportunity or, if they are not, they

16  are forever waived.'" *Bos. Telecommunications Grp., Inc. v. Deloitte Touche*

17  *Tohmatsu*, 249 F. App'x 534, 537 (9th Cir. 2007) (quoting *American Ass'n of*

18  *Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000)) (holding

19  that defendant's personal jurisdiction defense was waived by not including it along

20  with initial motion to dismiss).

21  Defendants did not challenge personal jurisdiction over the claims of Plaintiff at

22  the first opportunity. On October 30, 2018, Defendants filed a Rule 12 motion to

23  dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction and

24  failure to state a claim.  [Dkt. No. 25].  On November 20, 2018, Defendants filed a

25  reply on these same issues. [Dkt. No. 28].  Additionally, on December 4, 2018, at the

26  Court's hearing on Defendants' first motion to dismiss, Defendants also did not raise

27  the issue of personal jurisdiction. The Defendants now attempt to raise the issue of

28  personal jurisdiction in their second motion to dismiss in direct violation with Rule

12(g)(2) which states that a party "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

Given that this Circuit strictly construes the provisions of Rule 12, because the Defendants' second motion to dismiss under the Court's consideration today cannot possibly be considered the Defendants' first opportunity to raise the issue of personal jurisdiction, Defendants have effectively waived the defense of lack of personal jurisdiction.  Defendants waived this challenge.

### 2.    Regardless, this Court Has Personal Jurisdiction Over Defendants

This Court has broad personal jurisdiction powers. "In a diversity action, the U.S. District Court for the Northern District of California may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under California's long-arm statute and if that exercise of jurisdiction accords with federal constitutional due process principles." *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). "California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution." *Id*.  Specific jurisdiction exists where:

> 1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> 2. The claim must be one which arises out of or results from the defendant's *forum-related activities*.
>
> 3. Exercise of jurisdiction must be *reasonable*.

*Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (emphasis added).   The Ninth Circuit has adopted a more "flexible"

approach in determining whether specific jurisdiction exists. "[J]urisdiction may be exercised with a *lesser showing of minimum contact* than would otherwise be required if considerations of reasonableness dictate." *Id.* (original emphasis). Under this flexible approach, "there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1189 n.2 (9th Cir. 2002).

### a. Defendants Purposefully Availed Themselves of Doing Business in California

To support a finding that specific jurisdiction exists, the defendant must have purposefully availed himself of the privilege of conducting activities in California, or purposefully directed his activities toward California. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). This prong is satisfied by the defendant exercising "the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In assessing the existence of personal jurisdiction, a court must analyze all of a defendant's contacts with the forum state, "whether or not those contacts involve wrongful activity by the defendant." *Id.* at 1207.

In tort cases, courts "typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* at 1206. Under the "effects" test, a defendant must allegedly have:

(1) committed an intentional act,

(2) expressly aimed at the forum state,

(3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). In other words, a defendant need not be physically present within or have physical contacts with the forum, as long as the defendants' efforts are purposefully directed toward forum residents. Courts have also found that "where a defendant conducts extensive and ongoing scouting and recruiting in the forum and hires residents of the forum on a regular and continuous basis, . . . such conduct may satisfy the express aiming requirement of purposeful direction." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1029 (N.D. Cal. 2015); *see also Ochoa*, 287 F.3d at 1189-93 (finding specific jurisdiction where it was undisputed that labor contractor that hired workers in Arizona and brought them back to New York to work on the defendant's farm had "directed its recruiting activities toward Arizona"); *Davis v. NIH Fed. Credit Union*, No. 12–cv–5502 JCS, 2013 WL 2147468, at *6 (N.D. Cal. May 15, 2013) (holding that the plaintiff satisfied the "express aiming" requirement of the *Calder* "effects test" based on allegation that the defendants recruited her while she lived in California for the purpose of inducing her to move to Maryland). Furthermore, if acts taken by a corporate officer subject the officer to personal liability, and those acts create contact with the forum state, such acts constitute acts of the corporation as well as the individual corporate officer and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the individual. *See Seagate Technology v. A. J. Kogyo Co.*, 219 Cal. App. 3d 696, 701–04 (1990); *see also Davis v. Metro Productions, Inc.*, 885 F.2d 515, 524 (9th Cir. 1989).

Under the "effects" test, Defendants have purposefully directed their activity towards California through Defendants' recruitment of a California citizen, Plaintiff McKeever. SAC ¶ 4.

First, the intentional acts committed by Defendant Maney, on behalf of OpenSpend, were fraud and breach of fiduciary duty. Defendant Maney, acting on behalf of OpenSpend, made a number of oral representations to Plaintiff when Plaintiff was still living in California with no intention of honoring his representations *Id.* ¶¶ 14,

16.

Second, Defendants expressly aimed their acts at California as Defendants' knew that Plaintiff resided in California at the time of entering the employment and stock agreements. *Id.* ¶ 3. Lastly, Defendants knew that the harm caused by their actions would likely be suffered in California because Plaintiff was living in San Francisco and acting as interim general counsel for another company when Defendant Maney approached him about joining OpenSpend. *Id.* ¶¶ 3, 13; Decl. of Thomas McKeever ¶ 6. Therefore, the Defendants have purposefully directed their activities toward California.

In contract cases, courts "typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo!*, 433 F.3d at 1206. Courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when determining whether the defendant purposefully established minimum contacts. *Burger King*, 471 U.S. at 479.

Here, "Defendants conduct or solicit business within this District, have targeted this jurisdiction with the conduct giving rise to this action and have availed itself of the privilege of doing business in this jurisdiction." SAC ¶ 3.  For example, Defendants cannot dispute that they had at least one employee-salesperson who was tasked with selling OpenSpend's hair salon software to hair salons *based in California*. Decl. of Thomas McKeever ¶ 3. Unsurprisingly, Defendants have existing hair salon customers located in California. Decl. of Thomas McKeever ¶ 2.

Additionally, Defendant Maney, acting on behalf of OpenSpend, made a number of oral representations to Plaintiff during negotiations prior to entering the written offer contract, which included representations about Plaintiff's stock options. *Id.* ¶ 3.  At this time, Defendant Maney knew that McKeever was living in California.  Defendants also contemplated the future consequences of their actions as they had no intention of

honoring their representations and knew Plaintiff was living in California at the time. *Id.* ¶¶ 14, 16. Therefore, Defendants have purposefully availed themselves of the privilege of conducting activities in California.

Furthermore, case law supports specific jurisdiction based on a website if the "defendant purposefully (albeit electronically) directed his activity [via the website] in a substantial way to the forum state." *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Here, OpenSpend sells "a back-office software solution to hair salon operators" in California through its website "Salon Ultimate." SAC ¶ 12; Decl. of Thomas McKeever ¶ 2. Through Defendants' online conduct and solicitation of business within this state, they have availed themselves of the privilege of doing business in this jurisdiction. SAC ¶ 3; Decl. of Thomas McKeever ¶ 2.

Therefore, for all the aforementioned reasons, the purposeful availment prong has been satisfied.

### b. Plaintiff's Claims Arise from Defendants' Forum-related Activities

This Circuit applies a "but for" test in determining whether the claim "arises out of" the nonresident's forum-related activities. *See Ballard v. Savage*, 65 F3d 1495, 1500 (9th Cir. 1995). This prong is satisfied if Plaintiff demonstrates that it "would not have suffered injury 'but for' [the defendants'] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Even a single forum state contact can support jurisdiction if "the cause of action . . . arise[s] out of that particular purposeful contact of the defendant with the forum state." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

Defendant Maney, acting on behalf of OpenSpend, made a number of oral representations to Plaintiff when Plaintiff was still living in California with no intention of honoring his representations. SAC ¶¶ 14, 16. "But for" Defendants' forum-related recruitment activities, Plaintiff would not have moved to Austin, Texas, giving up other

business opportunities he had been pursuing in California. *Id.* ¶ 15. Furthermore, "but for" Defendants activities, Plaintiff would also not have incurred the cost of filing this lawsuit, the attorneys' fees related to this lawsuit, and Plaintiff's inability to exercise his shareholder rights. *Id.* ¶ 54.

Therefore, Plaintiff's claim is one which arises out of or results from Defendants' forum-related activities.

### c.  Jurisdiction Over Defendants is Reasonable

"Once minimum contacts is shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). The defendant then bears a "heavy burden" of overcoming this presumption. *Ballard*, 65 F.3d at 1500. To determine reasonableness, the court must consider:

> (1) the extent of [defendants'] purposeful interjection into the forum state's affairs;
>
> (2) the burden on [defendants] of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of [defendants'] home state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to Plaintiffs' interests in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

*Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). "None of the factors is dispositive in itself; instead, [the court] must balance all seven." *Id.* (quoting *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir.1993)).

Defendants cannot make a compelling case that jurisdiction is unreasonable. As to the first factor, a "court's determination that defendant has purposefully directed its activities toward [the forum state] is sufficient to resolve this factor in favor of jurisdiction." *Haisten*, 784 F.2d at 1400–01. As is set forth above, Defendants directed

1 their activities toward California.

2   As to the second factor, a defendants' burden in litigating in the forum is a factor

3 in the assessment of reasonableness, but unless the "inconvenience is so great as to

4 constitute a deprivation of due process, it will not overcome clear justifications for the

5 exercise of jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th

6 Cir. 1998) (quoting *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128–

7 29 (9th Cir. 1995)). It would not be unduly burdensome to Defendants to defend

8 themselves in California. With current technology and transportation alternatives, the

9 burden of litigating in another state is greatly reduced. *See, e.g.*, *Sinatra*, 854 F.2d at

10 1199.

11   The third factor "concerns the extent to which the district court's exercise of

12 jurisdiction in California would conflict with the sovereignty" of defendants' home

13 state. *Panavision*, 141 F.3d at 1323. It is not clear how a case that arose in California

14 in the first instance would conflict with the sovereignty of Texas or Delaware.

15 Therefore, this factor does not weigh in Defendants' favor.

16   The fourth factor weighs in Plaintiff's favor. California has "a strong interest in

17 protecting its residents from torts that cause injury within the state, and in providing a

18 forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260

19 (9th Cir. 1989).

20   The fifth factor, efficient judicial resolution, focuses on where the witnesses and

21 evidence are likely to be located. *Panavision*, 141 F.3d at 1323. But it is no longer

22 weighed heavily given today's advances in technology and transportation. *Id.*

23   The sixth factor weighs in Plaintiff's favor. Plaintiff chose to litigate his dispute

24 in California, his home state, which is most convenient to Plaintiff. SAC ¶¶ 4, 13.

25   Finally, the seventh factor regarding existence of an alternative forum, is not a

26 consideration here as this factor is "significant only if other factors weighed against

27 jurisdiction." *O'Keefe's, Inc. v. John Moriarty & Assocs. of Fla., Inc.*, No. C07-1986-

28 VRW, 2007 WL 2123567, at *5 (N.D. Cal. July 23, 2007).

Therefore, the Court's personal jurisdiction over Defendants is reasonable.

### 3.   At a Minimum, Jurisdictional Discovery Should be Permitted

The Court has broad discretion to permit limited jurisdictional discovery to determine whether it has personal jurisdiction. *Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, No. 15-cv-00151-BLF, 2015 WL 2090000, at *1 (N.D. Cal. May 5, 2015). The Ninth Circuit has held that discovery should be granted where a more satisfactory showing of the facts is necessary. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (holding that a party may request that the court permit discovery to aid in determining whether it has personal jurisdiction when pertinent facts bearing on the question of jurisdiction are controverted, or when a more satisfactory showing of the facts is necessary). In particular, discovery has been ordered "where there was a question as to whether jurisdiction could be established over an alien corporation through the employment of another as agent," as is the case here. *Fireman's Fund Ins. Co. v. Fuji Elec. Sys. Co.*, No. C-04-3627 MMC, 2005 WL 628034, at *6 (N.D. Cal. Mar. 17, 2005). Hence, the Court should permit McKeever to take limited personal jurisdiction-related discovery.

### C.   Leave to Amend Should Be Granted

For the reasons set forth above, Plaintiff's claims are sufficiently pled, and Defendants' Motion to Dismiss must be denied. If, however, the Court determines that there is a deficiency in Plaintiff's Complaint, leave to amend should be granted. Rule 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." "[T]his policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Furthermore, as a protective matter, Plaintiff respectfully requests leave to amend in the event Defendants' motion to dismiss is granted.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request this Court deny Defendants' Motion to Dismiss. However, to the extent this Court should find that

Plaintiff has not adequately alleged any of the legal theories discussed herein, Plaintiff respectfully request leave to amend to supplement those allegations and claims. Furthermore, if the Court deems that additional information is needed to establish personal jurisdiction over Defendants, it should grant Plaintiff the opportunity to obtain limited jurisdictional discovery from Defendants before making a determination on the issue.

Date:  January 16, 2019                    Respectfully submitted,

LTL ATTORNEYS LLP

By:  */s/ James M. Lee*
James M. Lee
*Attorneys for Plaintiff*
*Thomas McKeever*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3      The Undersigned hereby certifies that the foregoing document has been served on counsel of record via the Court's CM/ECF system.

4

5

6                                                          */s/ James M. Lee*

7                                                          James M. Lee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28